IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| THE STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 10-04268-CV-S-DGK |
| | ) | |
| v. | ) | |
| | ) | |
| NORTHROP GRUMMAN | ) | |
| GUIDANCE AND ELECTRONICS | ) | |
| COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## CONSENT DECREE AND SETTLEMENT

## TABLE OF CONTENTS

I.      BACKGROUND ................................................................................................. 3

II.     JURISDICTION ................................................................................................. 8

III.    PARTIES BOUND ............................................................................................. 8

IV.     DEFINITIONS................................................................................................... 10

V.      GENERAL PROVISIONS ................................................................................ 13

VI.     PERFORMANCE OF THE WORK BY SETTLING DEFENDANT ......................... 14

        A.      Designation of Contractors and Project Coordinators ...........................14

        B.      Implementation of Work.......................................................................17

        C.      Quality Assurance, Sampling, and Data Analysis .................................17

        D.      Reporting..............................................................................................21

        E.      Completion Reports ..............................................................................21

        F.      Final Site Report ..................................................................................22

        G.      Access to Property and Information; Land/Water Use Restrictions ......................23

        H.      Record Retention, Documentation, Availability of Information ............................30

        I.      Off-Site Shipments...............................................................................31

VII.      COMPLIANCE WITH OTHER LAWS ........................................................ 31

VIII.    EMERGENCY RESPONSE AND NOTIFICATION OF RELEASES ...................... 31

IX.      AUTHORITY OF MDNR'S PROJECT COORDINATORS ....................................... 33

X.       REIMBURSEMENT OF PAST AND FUTURE RESPONSE COSTS ...................... 33

XI.      AGENCY APPROVALS/SUBMITTALS ................................................................ 35

XII.     STIPULATED AND STATUTORY PENALTIES ...................................................... 36

XIII.    RESERVATION OF RIGHTS ................................................................................ 38

XIV.    FORCE MAJEURE ................................................................................................ 39

XV.     OTHER CLAIMS .................................................................................................. 41

XVI.    COVENANT NOT TO SUE .................................................................................. 41

XVII.   CONTRIBUTION PROTECTION AND CONTRIBUTION RIGHTS ...................... 42

XVIII.  INDEMNIFICATION ............................................................................................ 44

XIX.    MODIFICATIONS ................................................................................................ 44

XX.     NOTICE OF COMPLETION ................................................................................ 45

XXI.    ADDITIONAL WORK .......................................................................................... 46

XXII.   DISPUTE RESOLUTION ...................................................................................... 47

XXIII.  SEVERABILITY .................................................................................................... 47

XXIV.  NOTICES AND SUBMISSIONS .......................................................................... 49

XXV.   EFFECTIVE DATE AND COMPUTATION OF TIME ............................................ 50

XXVI.  TERMINATION OF 1993 CONSENT AGREEMENT ............................................ 51

XXVII. RETENTION OF JURISDICTION ........................................................................ 51

XXVIII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ................................ 51

XXIX.  SIGNATORIES/SERVICE .................................................................................... 52

XXX.   DISCLAIMER ...................................................................................................... 52

XXXI.  FINAL JUDGMENT AND SETTLEMENT ............................................................ 52

# CONSENT DECREE AND SETTLEMENT

This Consent Decree and Settlement ("Consent Decree") is made and entered into by Plaintiff, the State of Missouri, and the Defendant, Northrop Grumman Guidance and Electronics Company, Inc., formerly Litton Systems, Inc. ("Settling Defendant").

## I.      BACKGROUND

A.      The State of Missouri at the relation of Chris Koster, Attorney General, State of Missouri, and the Missouri Department of Natural Resources ("MDNR", collectively, the "State"), filed a Complaint in this matter alleging, inter alia, that Settling Defendant is liable to the State of Missouri under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, and applicable state laws.

B.      The State of Missouri in its Complaint seeks, inter alia: (1) response actions by Settling Defendant at the Site (hereinafter defined) consistent with the National Contingency Plan ("NCP"), 40 C.F.R. Part 300 (as amended), and in particular Work (hereinafter defined) set forth in the Scope of Work (hereinafter defined); (2) reimbursement of Future Response Costs (hereinafter defined); and (3) a judgment declaring Settling Defendant liable for Future Response Costs and for response actions at or from the Site resulting from releases or threatened releases of Hazardous Substances (hereinafter defined).

C.      This Consent Decree pertains to the real property, located at 4811 West Kearney Street, Springfield, Greene County, Missouri, and as identified on Exhibit "1" attached hereto and incorporated herein (the "Site").

D.      Settling Defendant's operations at the Site began in the mid-1960's.  The primary activities at the Site included the manufacture of printed circuit boards.

E.      MDNR alleges that Hazardous Substances have been disposed or released at the Site.

F.     MDNR alleges that the conditions at or associated with the Site constitute a "hazardous substance emergency" as that term is defined in § 260.500(6) RSMo.

G.     MDNR has the authority to: (1) require reasonable actions to cleanup Hazardous Substances; (2) investigate and clean up releases associated with the Site; (3) recover all response costs not inconsistent with the NCP; and (4) enter into agreements with respect to the elimination of alleged violations of environmental laws and the cleanup of real property contaminated by Hazardous Substances.  The Missouri Attorney General has the authority to bring an action to abate any public nuisance present at a site.

H.     Settling Defendant took the following actions at the Site:

1.     In the late 1970's the "Original" Acid and Sludge pits were reportedly closed with oversight by MDNR Waste Management personnel from the Jefferson City Office and MDNR Water Pollution Control personnel from the Springfield Regional Office.

2.     In 1982 the "A" and "B" Lagoon underwent closure with MDNR oversight. Closure activities included removal of sludge and fluid, some soil excavation and backfilling with clean fill.

3.     Settling Defendant entered into a Consent Agreement on July 12, 1993 with MDNR to develop and implement an on-Site remedial action plan.

4.     In the 1990s Settling Defendant conducted a Phase I Remedial Investigation, a Phase II Remedial Investigation, and a Bedrock Investigation at the Site which included soil sampling and analysis, groundwater monitoring well installation, groundwater sampling, and geophysical investigation.

5.	In 1995 extraction wells were installed as part of the Interim Remedial Measure (IRM) groundwater recovery system. The system was installed in an effort to remove contaminated groundwater along the west-central portion of the Site.

6.	In 1999 a Soil Vacuum Extraction (SVE) pilot study was conducted at the "New" Acid Pit and was subsequently upgraded to a High Vacuum Extraction (HVE) pilot study. In 2003, the HVE Pilot Study was discontinued with MDNR approval.

7.	In May 2003, Settling Defendant commenced an additional Remedial Investigation and Feasibility Study for the Site pursuant to 40 C.F.R. § 300.430.

8.	Settling Defendant prepared a Remedial Investigation ("RI") Phase I Report dated April 2, 2004, which was submitted to MDNR and approved by MDNR.

9.	Settling Defendant prepared a Remedial Investigation Phase II Report dated April 8, 2005, which was submitted to MDNR and approved by MDNR.

10.	Settling Defendant prepared a Targeted Risk Assessment for soils dated November 18, 2005, which was submitted to MDNR and approved by MDNR.

11.	Settling Defendant prepared a Phase II Feasibility Study Report ("FS") that evaluated remedial alternatives for on-Site soils, dated July 22, 2005, which was submitted to MDNR and approved by MDNR.

12.	Settling Defendant prepared an RI Phase III Work Plan dated August 22, 2005, which was submitted to MDNR and approved by MDNR.

13.	In 2005 a report of buried debris near the former "Original" Acid Pits prompted an investigation of that area to delineate the area for buried debris. After a metallic anomaly was identified, the area was excavated and debris removed from the excavation was disposed of offsite with MDNR approval and oversight.

14.     In July 2005, Settling Defendant submitted an Electrical Resistive Heating (ERH) Pilot Study Work Plan as a proposed soil remedy.  In a February 6, 2006 letter, MDNR approved Settling Defendant's proposed use of ERH to remediate on-Site soils and established cleanup objectives associated with the ERH remedy.  Settling Defendant submitted an ERH Pilot Study Final Report on March 10, 2006, which was approved by MDNR in a March 17, 2006 letter subject to submission of additional information to MDNR.  The additional information was submitted to MDNR on June 29, 2006.

15.     In 2006, Settling Defendant performed the work as outlined in the Phase III RI Work Plan.

16.     Settling Defendant prepared a Remedial Investigation Phase III Summary Report, dated December 29, 2006, which was submitted to MDNR and approved by MDNR.

17.     Settling Defendant prepared a Remedial Design/Remedial Action (RD/RA) Work Plan, dated November 9, 2006, which was submitted to MDNR (and supplemented on October 9, 2007) and approved by MDNR.

18.     Settling Defendant prepared a Change in Use request and Work Plan for the demolition of the buildings on the Site which was submitted to the MDNR on October 31, 2007 and approved by MDNR on April 8, 2008.  Settling Defendant completed the building demolition activities in December 2008.

19.     Settling Defendant began installation of the ERH soil remediation system within the New Acid Pit area of the Site in January 2008 and commenced ERH treatment in June 2008.  On December 4, 2008 Settling Defendant conducted confirmation soil sampling in the New Acid Pit ERH treatment area.  The soil sampling indicated that the soil remediation

objectives in the New Acid Pit ERH treatment area had been achieved. The Settling Defendant then conducted four weeks of additional ERH treatment as a contingency.

20. Settling Defendant prepared a scope of work for a subfloor investigation at the Site building complex which was submitted to the MDNR on January 8, 2008 and approved by MDNR. Settling Defendant completed the subfloor investigation activities and submitted a subfloor investigation report to MDNR on July 31, 2008. MDNR recommended additional delineation activities, which Settling Defendant began in January, 2009.

I. Settling Defendant and MDNR are entering this Consent Decree to implement remedial actions on-Site and off-Site. The 1993 Consent Agreement provided that if it is determined that additional work is deemed necessary off-Site, the 1993 Consent Agreement may be modified or a new agreement executed to assess the additional problem. MDNR has determined that additional work is necessary beyond the Settling Defendant's property boundaries. This Consent Decree is being entered for that purpose and supersedes the 1993 Consent Agreement, which terminates on the Effective Date of this Consent Decree pursuant to Section XXVI (Termination of 1993 Consent Agreement).

J. Settling Defendant does not admit any liability to the State arising out of the transactions or occurrences alleged in the Complaint, nor does it acknowledge that the release or threatened release of Hazardous Substances at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

K. Based on the information presently available to the State, the State believes that the Work outlined in the Scope of Work (hereinafter defined and/or attached hereto as Appendix "A"), as may be amended from time to time, will be properly and promptly conducted by

Settling Defendant if conducted in accordance with the requirements of this Consent Decree and its appendices.

L.       Additionally, for the purposes of Section 113 (j) of CERCLA, the Work performed by Settling Defendant shall constitute a response action taken or ordered by the State.

M.       The Parties recognize, and the Court entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, and implementation of this Consent Decree will expedite the cleanup of releases at or from the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.       JURISDICTION

1.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, 42 U.S.C. §§ 9607 and 9613(b), and applicable State law.  This Court also has personal jurisdiction over Settling Defendant for the purposes of this Consent Decree and the underlying Complaint.  Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District solely for the purposes of this Consent Decree and the underlying Complaint.  Settling Defendant shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.       PARTIES BOUND

2.       Settling Defendant is a corporation in good standing authorized to do business in Missouri.  Settling Defendant's principal place of business is located at 1840 Century Park East, Los Angeles, California, 90067.

3.       The State of Missouri, at the relation of Chris Koster, the Attorney General and MDNR, is the Plaintiff in the Complaint filed in this action.

4.     MDNR is the regulatory agency with authority under Missouri law to regulate, respond to, take enforcement action in response to, and to settle claims relating to contamination of the environment, including contamination caused by the release, threatened release, discharge, or presence of Hazardous Substances.  The Missouri Attorney General is authorized by Chapter 27, RSMo to initiate litigation and to enter into such settlements as are necessary to protect the interests of the State.

5.     This Consent Decree applies to and is binding upon and inures to the benefit of the State and MDNR and Settling Defendant and Settling Defendant's officers, directors, employees, agents, successors and assigns, trustees and receivers and anyone acting under or on behalf of Settling Defendant.  The signatories to this Consent Decree certify that they are authorized to execute and legally bind the Parties that they represent to this Consent Decree.

6.     Settling Defendant shall be responsible for and liable for any failure to carry out the Work (hereinafter defined) required of Settling Defendant pursuant to this Consent Decree regardless of Settling Defendant's use of employees, agents, contractors or consultants to perform such tasks.

7.     No change in ownership or partnership status relating to the Settling Defendant's real property shall in any way alter Settling Defendant's responsibility under this Consent Decree.  Settling Defendant shall give written notice of this Consent Decree to any successor in interest prior to transfer of ownership or operation of the real property (or any portion thereof) and shall notify MDNR in writing prior to such transfer.  Settling Defendant shall include as a condition in any such transfer that Settling Defendant has a right to access the Settling Defendant's property in order to conduct the Work required under this Consent Decree.

8.      Settling Defendant shall provide a copy of this Consent Decree to its contractors retained to conduct any Work performed under this Consent Decree within ten (10) working days of the Effective Date of this Consent Decree or the date of retaining their services, whichever is later.  Settling Defendant shall condition any such contracts for Work to be performed under this Consent Decree upon satisfactory compliance with this Consent Decree to the extent it is applicable to the Work to be performed by such person.  Settling Defendant shall be responsible for any noncompliance with this Consent Decree and shall notify its contractors, subcontractors, laboratories, consultants, and other representatives of the existence of this Consent Decree to the extent it is applicable to Work to be performed by such persons.  With regard to the Work undertaken pursuant to this Consent Decree, each contractor, subcontractor and consultant shall be deemed to be in a contractual relationship with the Settling Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV.      DEFINITIONS

9.      Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them by CERCLA or its implementing regulations.  Whenever terms listed below are used in this Consent Decree, or in the exhibits or appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, et seq.

"Consent Agreement" shall mean the administrative agreement between MDNR and Settling Defendant last signed by a signatory on July 12, 1993 and may also be called the "1993 Consent Agreement".

"Consent Decree" shall mean this Consent Decree and Settlement and all appendices attached hereto or incorporated by reference. In the event of a conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working or business day. "Working day" or "business day" shall mean a day other than a Saturday, Sunday, or federal or state holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or state holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall mean the date that this Consent Decree is effective, pursuant to Section XXV of this Consent Decree.

"EPA" or "U.S. EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Response Costs" shall mean all reasonable direct response costs incurred by MDNR for which MDNR invoices Settling Defendant under this Consent Decree for Work performed after the Effective Date for reviewing or developing plans, reports and other items pursuant to this Consent Decree, compliance monitoring, including the collection and analysis of samples, inspection of activities, visits to the Site, public outreach activities, verifying the Work, or otherwise implementing, or overseeing this Consent Decree. Future Response Costs also shall include reasonable indirect costs for work under this Consent Decree in performing the activities identified in the preceding sentence. The total of direct and indirect costs for MDNR staff shall be calculated by applying a multiplier of 3.5 to the hourly rate for that staff member.

"Hazardous Substances" shall have the same meaning as in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

"Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Interest" shall mean interest at the current rate specified for interest on investments of the Hazardous Substance Superfund, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).

"Matters Addressed" shall mean the Past Work, the Work, Future Response Costs and any environmental, safety or health impacts the Work was designed to address.

"MDNR" shall mean the Missouri Department of Natural Resources and any successor departments or agencies of the State.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, including but not limited to, any amendments thereto.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an uppercase letter.

"Parties" shall mean the State of Missouri and the Settling Defendant.

"Past Work" shall mean all work conducted and response costs incurred prior to the Effective Date of this Consent Decree by Settling Defendant or other parties to address the disposal, release or threatened release of Hazardous Substances at or from the Site, including, but not limited to, past investigation and removal actions and work conducted pursuant to the 1993 Consent Agreement between Settling Defendant and MDNR related to the Site as well as all payments made by Settling Defendant to MDNR pursuant to the 1993 Consent Agreement.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 et seq. (also known as the Resource Conservation and Recovery Act).

"Scope of Work" shall mean the document attached hereto as Appendix A, and, by this reference, incorporated herein, and any modifications, amendments or additions made to the Scope of Work in accordance with this Consent Decree.

"Section" shall mean a portion of this Consent Decree identified by a roman numeral.

"Settling Defendant" shall mean Northrop Grumman Guidance and Electronics Company, Inc. (formerly Litton Systems, Inc.), and all of its successors, predecessors, assigns, parents, subsidiaries and affiliates.

"Site" shall have the meaning set forth in Section I of this Consent Decree.

"State" shall mean the State of Missouri, including all its departments, agencies and instrumentalities.

"United States" shall mean the United States of America, including all of its departments, agencies and instrumentalities.

"Work" shall mean all work and other activities Settling Defendant is required to perform under this Consent Decree, including, but not limited to, the activities set out in the Scope of Work, attached hereto as Appendix A, as may be amended from time to time, and any additional response actions agreed upon by the Parties, and any response costs incurred by Settling Defendant.

## V.    GENERAL PROVISIONS

10.    <u>Objectives of the Parties</u>.   By entering into this Consent Decree, the mutual objectives of the Parties are to protect public health and welfare or the environment by: (1) implementing the Scope of Work; and (2) implementing any other response actions agreed upon by the Parties.

11.    Commitments by Settling Defendant. Settling Defendant shall finance and perform the Work in accordance with this Consent Decree, the Scope of Work and all other work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendant and approved by MDNR pursuant to this Consent Decree.  Settling Defendant shall also reimburse the State for Future Response Costs as provided in this Consent Decree. Any costs incurred by MDNR with respect to Past Work and prior to the Effective Date of this Consent Decree will be reimbursed and/or contested by Settling Defendant according to the terms of the 1993 Consent Agreement and Paragraph 55 of this Consent Decree.

## VI.       PERFORMANCE OF THE WORK BY SETTLING DEFENDANT

### A.      Designation of Contractors and Project Coordinators

12.    Settling Defendant shall notify MDNR in writing of the name(s) and qualifications of any contractor retained after the Effective Date to perform Work under this Consent Decree at least ten (10) days prior to the commencement of Work by such contractor.

13.    MDNR retains the right to reasonably disapprove of any of the contractors retained after the Effective Date by Settling Defendant to implement the Work and shall provide the basis for MDNR's disapproval.  Such disapproval shall be provided in writing within ten (10) days after MDNR's receipt of the notice provided pursuant to this paragraph. If MDNR disapproves of a selected contractor, Settling Defendant shall, subject to Section XXII (Dispute Resolution) of this Consent Decree, retain a different contractor within forty-five (45) days following the receipt of MDNR's disapproval and shall notify MDNR of the identities of the replacement contractor(s) and their qualifications.

14.    Settling Defendant has designated the individual listed below as its Project Coordinator for this Consent Decree.   Settling Defendant's Project Coordinator shall be responsible for administration of the Work to be performed by Settling Defendant pursuant to

this Consent Decree.  To the extent possible, Settling Defendant's Project Coordinator shall be

present on-Site or readily available during the performance of Work.  Settling Defendant's

Project Coordinator is as follows:

> Jay Tolle, Manager
> Environmental Programs & Remediation
> Northrop Grumman Systems Corporation
> Electronic Systems
> P.O. Box 1693
> Mailstop 1401
> Baltimore, Maryland 21203

15.     MDNR has designated the individual listed below as its Project Coordinator for

this Consent Decree.  Settling Defendant shall direct all submissions required by this Consent

Decree, by U.S. mail, overnight delivery or facsimile transmission, to MDNR's Project

Coordinator.  The MDNR Project Coordinator is as follows:

> Evan Kifer
> Environmental Specialist
> Remedial Project Management Unit
> MDNR, Superfund Section
> P.O. Box 176
> Jefferson City, Missouri 65102

16.     MDNR and Settling Defendant shall have the right to change their designated

Project Coordinator.  To the extent practicable, Settling Defendant shall notify MDNR ten (10)

days before such a change is made.  The initial notification may be made orally, followed by a

written notice.  MDNR retains the right to reasonably disapprove of any future Project

Coordinator named by Settling Defendant.  Such disapproval shall be in writing, provided within

ten (10) days of MDNR receiving notice of the substitute of the Project Coordinator, and shall

provide the basis for the disapproval.  If MDNR disapproves of a proposed Project Coordinator,

subject to Section XXII (Dispute Resolution), Settling Defendant shall designate a different

Project Coordinator and shall notify MDNR of that person's name, address, telephone number, and qualifications within forty-five (45) days following receipt of MDNR's disapproval.

17.     Settling Defendant shall perform the Work specified in the Scope of Work. All activities required by the Consent Decree shall be conducted in accordance with CERCLA, the Missouri Hazardous Waste Management Law, § 260.350, et seq., RSMo, and the NCP. The Scope of Work, Appendix A, does not include conducting a Feasibility Study for groundwater or implementing a remedy for impacted groundwater. Settling Defendant shall conduct a Feasibility Study for groundwater and agrees that, pursuant to the schedule submitted to and approved by MDNR pursuant to Section VI.B of this Consent Decree, it will submit to MDNR for review and approval pursuant to Section XI (Agency Approvals/Submittals) of this Consent Decree an amended Appendix A to include conducting a Feasibility Study for groundwater. The parties agree that either (1) they will negotiate, in good faith, a second Consent Decree to address implementation of a groundwater remedy following completion of the Feasibility Study for the groundwater, or (2) Settling Defendant may elect to amend Appendix A, the Scope of Work, to include Work that will implement the remedy proposed in the Feasibility Study for groundwater. Within thirty (30) days after MDNR's approval of Settling Defendant's Feasibility Study for groundwater, Settling Defendant shall notify MDNR whether or not it elects the second option to amend Appendix A. If Settling Defendant elects the second option, Settling Defendant shall submit to MDNR an amendment to Appendix A, the Scope of Work, within sixty (60) days of the Settling Defendant's election of the second option. If Settling Defendant fails to elect the second option within the thirty (30) day period, the parties agree to begin good faith negotiations toward entering a second Consent Decree to address implementation of a groundwater remedy.

**B.      Implementation of Work**

18.      Settling Defendant has prepared a Scope of Work.  The Scope of Work has been submitted to MDNR and will be subject to public comment consistent with the NCP in accordance with Section XXVIII (Lodging and Opportunity for Public Comment) of this Consent Decree.  Within sixty (60) days of the Effective Date of this Consent Decree and annually thereafter, Settling Defendant shall submit to MDNR for review and approval pursuant to Section XI (Agency Approvals/Submittals) a schedule setting forth a timetable for the Work to be conducted pursuant to this Consent Decree.

19.      The Scope of Work will be implemented in accordance with the terms of this Consent Decree.  All work plans and schedules contained therein and any subsequent modifications shall be incorporated into and shall be fully enforceable under this Consent Decree.

20.      Settling Defendant shall notify MDNR at least ten (10) days prior to performing any on-Site Work pursuant to the work plans required under this Consent Decree and shall identify the field work to be performed and the expected duration of the Work.

21.      Settling Defendant shall prepare and maintain a Site-Specific Health and Safety Plan pursuant to the Scope of Work to the extent it is required as part of any Work to be conducted.

22.      Settling Defendant shall prepare and maintain an Operations and Maintenance Plan as an appendix to the Scope of Work.

**C.      Quality Assurance, Sampling, and Data Analysis**

23.      Settling Defendant shall use quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance and monitoring samples in accordance

with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001) "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998), and subsequent amendments to such guidelines upon notification by MDNR to Settling Defendants of such amendment. Amended guidelines shall apply only to procedures conducted after such notification. Prior to the commencement of any monitoring project under this Consent Decree, to the extent it is required as part of any Work to be conducted, Settling Defendant shall prepare and maintain a Quality Assurance Project Plan ("QAPP") pursuant to the Scope of Work that is consistent with the Scope of Work and the NCP. If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by MDNR shall be admissible as evidence, without objection, in any proceeding under this Consent Decree. Settling Defendant shall ensure, to the extent reasonably possible, that MDNR personnel and its authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendant in implementing this Consent Decree. In addition, Settling Defendant shall ensure that such laboratories shall analyze all reasonable samples submitted by MDNR pursuant to the QAPP for quality assurance monitoring. Settling Defendant shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Consent Decree perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Consent Decree; however, upon approval by MDNR, the Settling Defendant may use other analytical methods which are as stringent as or more stringent than the Contract Lab Program approved methods. Settling

Defendant shall ensure that all laboratories it uses for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program.  Settling Defendant shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA.  MDNR may consider laboratories accredited under the National Environmental Laboratory Accreditation Program (NELAP) as meeting the Quality System requirements.  Settling Defendant shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in the QAPP approved by MDNR.

24.　　Upon request, the Settling Defendant shall allow split or duplicate samples to be taken by MDNR or its authorized representatives.  Settling Defendant shall notify MDNR not less than ten (10) days in advance of any sample collection activity unless shorter notice is agreed to by MDNR.  In addition, MDNR shall have the right to take any additional samples for monitoring compliance with this Consent Decree.  Upon request, MDNR shall allow the Settling Defendant to take split or duplicate samples of any samples it takes as part of the MDNR's oversight of the Settling Defendant's implementation of the Work.

25.　　Settling Defendant shall maintain all validated analytical data developed in connection with this Consent Decree in a searchable electronic database (Microsoft Access or equivalent) to the extent practicable.  The analytical data in the database shall include: sample ID; date and time collected; parameter; concentration; units; method detection limits; error range

(if applicable); laboratory qualifiers; and analytical method. Settling Defendant shall submit to MDNR in an electronic format, upon request by MDNR, available analytical data for samples collected pursuant to this Consent Decree. Settling Defendant shall use reasonable efforts to summarize other available information in electronic format including: sample matrix (soil, surface water, groundwater, etc.); type (grab, composite, split spoon, etc.); location (in GPS or State Plane coordinates); and depth (MSL). The electronic deliverables shall include the other information described above to the extent practicable. MDNR will provide to Settling Defendant laboratory data from split samples or other samples taken by MDNR pursuant to this Consent Decree in a similar format to that which is provided by Settling Defendant.

26.     Settling Defendant agrees that pursuant to the schedule submitted to and approved by MDNR pursuant to Section VI.B of this Consent Decree, it will submit to MDNR for review and approval pursuant to Section XI (Agency Approvals/Submittals) of this Consent Decree a work plan for conducting a Screening Level Ecological Risk Assessment (SLERA) to be conducted in accordance with Step 1 and 2 of current EPA guidance, including the "Ecological Risk Assessment Guidance for Superfund", June 1997. For exposure and toxicity parameters for which site-specific information is lacking, the most conservative (i.e., protective) values shall be used to ensure that a defensible conclusion can be drawn that a negligible ecological risk exists or that certain contaminants and exposure pathways can be eliminated from consideration. The SLERA report will be submitted to MDNR for review and approval, or approval with modification. If the SLERA concludes negligible ecological risk based on adequately documented and technically defensible information, no further action will be required. If the SLERA warrants further action, a Baseline Ecological Risk Assessment (BERA) shall be

conducted in accordance with Steps 3 – 8 of current EPA guidance, including the "Ecological Risk Assessment Guidance for Superfund", June 1997.

27.     Settling Defendant shall submit to MDNR copies of the validated results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendant with respect to the Site and/or the implementation of this Consent Decree unless MDNR agrees otherwise.

28.     Notwithstanding any provision of this Consent Decree, MDNR hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

### D.     Reporting

29.     Settling Defendant shall submit written progress reports to MDNR concerning all activities undertaken pursuant to this Consent Decree on a quarterly basis to be submitted within 30 days of the end of each calendar quarter after the Effective Date of this Consent Decree. These reports shall describe all significant developments during the preceding reporting period, including, but not limited to: a description of the Work performed; any problems encountered that might have an impact on the successful completion of the Work in progress; and any developments anticipated for the next reporting period, including a schedule of Work to be performed, any anticipated problems, and planned resolution(s) of past or anticipated problems.

### E.     Completion Reports

30.     Settling Defendant shall submit for MDNR review and approval a Completion Report upon the completion of the Work set forth in each designated phase of the Scope of Work.  Each Completion Report shall include a discussion of the Work completed pursuant to

the applicable phase of the Scope of Work, and a presentation of the validated analytical results of all sampling and analysis performed in connection with the Work.

31.    Each Completion Report shall also include the following certification signed by a person who supervised or directed the preparation of that report:

"Under penalty of law, I certify that to the best of my knowledge, after appropriate inquiries of all relevant persons involved in the preparation of the report, the information submitted is true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

### F.    Final Site Report

32.    Settling Defendant shall submit for MDNR review and approval a Final Site Report upon the completion of all of the Work set forth in the Scope of Work, as it may be amended from time to time.  The Final Site Report shall include a discussion of the Work completed pursuant to the Scope of Work, and a presentation of the analytical results of all sampling and analysis performed in connection with the Work.

33.    The Final Site Report shall also include the following certification signed by a person who supervised or directed the preparation of that report:

"Under penalty of law, I certify that to the best of my knowledge, after appropriate inquiries of all relevant persons involved in the preparation of the report, the information submitted is true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

**G.      Access to Property and Information; Land/Water Use Restrictions**

34.      <u>Site Access</u>.  Subject to the provisions of Paragraph 35 below, Settling Defendant shall obtain and provide access to the Site and to all areas subject to or affected by the Work required under this Consent Decree and, except to the extent the information is privileged, shall also provide access to all records and documentation in Settling Defendant's possession or control that relate to the conditions at the Site and the activities conducted pursuant to this Consent Decree.  Such access shall be provided, to the extent possible, to MDNR's employees, contractors, agents, consultants, designees and representatives, upon proper presentation of credentials, who shall be permitted to move about the Site, subject to Settling Defendant's applicable security, health and safety rules, or any other applicable procedures, in order to conduct activities the Project Coordinator deems necessary under this Consent Decree.  Nothing herein shall be interpreted as limiting or affecting MDNR's right of entry or inspection authority under state and federal law.

35.      <u>Access to Property Owned by Others</u>.  Where Work under this Consent Decree is to be performed in areas owned by or in the possession of someone other than Settling Defendant, Settling Defendant shall use its "best efforts" (see Paragraph 36) to obtain from such persons, within forty-five (45) days after MDNR approval of each phase of the Scope of Work, an agreement to provide access thereto (an "Access Agreement") for Settling Defendant, the United States on behalf of EPA, and the State, as well as its representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to the following activities:

     (a)      Monitoring the Work;

     (b)      Verifying any data or information submitted to the United States or the

State

    (c)    Conducting investigations relating to contamination at or near the Site;

    (d)    Obtaining samples;

    (e)    Assessing the need for, planning, or implementing additional response actions at or near the Site;

    (f)    Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plan;

    (g)    Implementing the Work pursuant to the conditions set forth in Section XXI (Additional Work) of this Consent Decree;

    (h)    Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or its agents, consistent with this Section VI.G (Access to Property and Information; Land/Water Use Restrictions);

    (i)    Assessing Settling Defendant's compliance with this Consent Decree; and

    (j)    Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree.

36.    <u>Best Efforts Regarding Site Access</u>.  For purposes of Paragraph 35, "best efforts" shall mean:

    (a)    Agreeing, upon request by the property owner, to provide splits or duplicates of all samples collected on the property to the property owner; and

    (b)    Agreeing, upon request by the property owner, to provide results of all analyses of samples collected on the property to the property owner.

Settling Defendant shall provide written notice to MDNR if, after using its best efforts as set forth in this Paragraph, it is unable to obtain such an Access Agreement, the notice to include a description of its efforts to obtain an Access Agreement. MDNR may then assist Settling Defendant in gaining access, to the extent necessary to effectuate the response actions described herein, using such means as MDNR deems appropriate. Settling Defendant shall reimburse MDNR for all reasonable costs and attorneys' fees incurred by the State in obtaining such access, in accordance with the procedures in Section X (Reimbursement of Past and Future Response Costs); provided, however, Settling Defendant shall not reimburse MDNR for any payment made to landowners for access.

37.     Land/Water Use Restrictions on Property Owned or Controlled by Settling Defendant. If land/water use restrictions are needed on any property owned or controlled by Settling Defendant at the Site to implement this Consent Decree, prior to the submission of the Final Site Report under this Consent Decree, Settling Defendant shall execute and record in the Recorder of Deeds Office of Greene County, State of Missouri, an environmental covenant, running with the land, that: (i) grants a right of access for the purpose of monitoring compliance with the land/water use restrictions, and (ii) grants the right to enforce any land/water use restrictions which may be included in such environmental covenant. Settling Defendant shall grant the access rights and the rights to enforce the land/water use restrictions to: (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, and/or (iii) other appropriate grantees agreed to by Settling Defendant and the State. Prior to executing and recording such environmental covenant, Settling Defendant shall submit to MDNR for review and approval with respect to such property:

(a)    A draft covenant that is enforceable under the laws of the State of Missouri including the Missouri Uniform Environmental Covenants Act of 2007 (MoECA), §§ 260.1000 to 260.1039, RSMo, as may be amended from time to time; and

(b)    a current title insurance commitment or some other evidence of title acceptable to MDNR, which shows title to the land described in the covenant to be free and clear of all prior liens and encumbrances (except those liens or encumbrances not affected by the environmental covenant or which are approved by MDNR, or when, despite "best efforts" (see Paragraph 39), Settling Defendant is unable to obtain a release or subordination of such prior liens or encumbrances).

Within 20 days of MDNR's approval and acceptance of the draft covenant and the title evidence, Settling Defendant shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, record the covenant with the Recorder of Deeds Office of Greene County.  Within 30 days of recording the covenant, Settling Defendant shall provide MDNR with a copy of the updated search and a certified copy of the original recorded covenant showing the clerk's recording stamps.

38.    Land/Water Use Restrictions on Property Owned by Others.  If the Site, or any other property where land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than the Settling Defendant, Settling Defendant shall use its "best efforts" (see Paragraph 39) to secure from such persons:

(a)    an agreement, enforceable by the Settling Defendant and the State, to refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the integrity or protectiveness of the remedial measures performed pursuant to this Consent Decree; or

(b)     the execution and recordation in the Recorder of Deeds Office for Greene County, State of Missouri, of an environmental covenant, running with the land, that: (i) grants a right of access for the purpose of monitoring compliance with the land/water use restrictions, and (ii) grants the right to enforce any land/water use restrictions which may be included in such environmental covenant. The access rights and/or rights to enforce land/water use restrictions shall be granted to one or more of the following persons: (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the Settling Defendants and their representatives, and/or (iv) other appropriate grantees as may be agreed to by such land owner.

Prior to executing and recording a covenant on property owned or controlled by persons other than the Settling Defendant, Settling Defendant shall submit to MDNR for review and approval with respect to such property:

(1)     a draft covenant that is enforceable under the laws of the State of Missouri, including the Missouri Uniform Environmental Covenants Act of 2007 (MoECA) §§ 260.1000 to 260.1039, RSMo, as may be amended from time to time; and

(2)     a current title insurance commitment, or some other evidence of title acceptable to MDNR, which shows title to the land described in the covenant to be free and clear of all prior liens and encumbrances (except those liens or encumbrances not affected by the environmental covenant or which are approved by MDNR, or when, despite "best efforts" (see Paragraph 39), Settling Defendant is unable to obtain a release or subordination of such prior liens or encumbrances).

Within 20 days of MDNR's approval and acceptance of the draft covenant and the title evidence, Settling Defendant shall, to the extent its best efforts have secured an executed environmental covenant from such land owner(s), update the title search and, if it is determined

that nothing has occurred since the effective date of the commitment to affect the title adversely, record the covenant with the Recorder's Office of Greene County. Within 30 days of the recording of the covenant, Settling Defendant shall provide MDNR with a copy of the updated title search and a certified copy of the original recorded covenant showing the clerk's recording stamps.

39. <u>Best Efforts Regarding Land/Water Use Restrictions.</u> Settling Defendant shall, for purposes of Paragraph 38 of this Consent Decree, use its "best efforts" (see below) to obtain such agreements or land/water use restrictions: (a) with respect to groundwater, within 90 days of MDNR's approval of the final remedial work plan for groundwater at the Site; and (b) with respect to soils, prior to the submission of the Final Site Report.

For purposes of Paragraphs 37, 38 and 39 of this Consent Decree, "best efforts" shall mean: (1) entering into good faith negotiations with applicable third parties in an effort to obtain and perfect the agreements, land/water use restrictions, and/or an agreements to release or subordinate a prior lien or encumbrance; and (2) the incurrence by Settling Defendant of reasonable expenses in obtaining and perfecting the agreements, land/water use restrictions, and/or an agreements to release or subordinate a prior lien or encumbrance. For purposes of Paragraphs 37, 38 and 39 of this Consent Decree, "best efforts" shall not include offers by Settling Defendant of any monetary consideration or just compensation to any person for providing and perfecting the agreements, land/water use restrictions, and/or an agreements to release or subordinate a prior lien or encumbrance.

If Settling Defendant is unable to obtain agreements pursuant to Paragraphs 37 or 38 from the holder of a prior lien or encumbrance to release or subordinate such lien or encumbrance or is unable to obtain agreements or land/water use restrictions pursuant to

Paragraph 38 within the time allowed under Paragraphs 39(a) and (b) above, Settling Defendant shall promptly notify the State in writing, and shall include in that notification a summary of the steps that Settling Defendant has taken to attempt to comply with Paragraphs 37, 38 and 39 of this Consent Decree.  The State may, as it deems appropriate, assist Settling Defendant in obtaining land/water use restrictions, either in the form of contractual agreements or in the form of covenants running with the land, or in obtaining the release or subordination of a prior lien or encumbrance.  Settling Defendant shall reimburse the State in accordance with the procedures in Section X (Reimbursement of Future Response Costs) for all Future Response Costs incurred by the State in obtaining such agreements, land/water use restrictions, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time.  Settling Defendant shall have no obligation to reimburse the State for any monetary consideration or just compensation paid by or on behalf of the State in obtaining such agreements, land/water use restrictions, and/or the release/subordination of prior liens.

40.     If MDNR determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement a selected remedy to ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendant shall cooperate with the State's efforts to secure such governmental controls.

41.     Notwithstanding any provision of this Consent Decree other than Section XVI (Covenant Not to Sue) and Section XXII (Dispute Resolution), the State retains all of its access authorities and rights, as well as all of their rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

**H.     Record Retention, Documentation, Availability of Information**

42.     Settling Defendant shall preserve all final documents and validated analytical data relating to the Work performed under this Consent Decree or the Hazardous Substances found on or released at or from the Site, for ten (10) years following issuance of the Notice of Completion by MDNR pursuant to Section XX of this Consent Decree.  If during such ten-year period, MDNR requests in writing to review or copy any such documentation or information, Settling Defendant shall, except to the extent such information is privileged, provide the original or copies, including electronic copies, of such documents or information to MDNR within sixty (60) days of receipt of the written request.  At the end of this ten year period and sixty (60) days before any such document or information is destroyed, Settling Defendant shall notify MDNR that such documents and information are available to MDNR for inspection, and upon MDNR's request, Settling Defendant shall provide the original or copies of such documents and information to MDNR.

43.     Settling Defendant may assert a business confidentiality claim pursuant to § 260.430 RSMo, as may be amended from time to time, with respect to part or all of any information submitted to MDNR pursuant to this Consent Decree, provided such claim is allowed by applicable law.

44.     Settling Defendant may assert that certain documents or records required to be submitted to MDNR pursuant to this Consent Decree are privileged under the attorney-client privilege or are attorney work product.  If Settling Defendant asserts such a privilege in lieu of providing documents, Settling Defendant shall provide MDNR with the following: (a) the title of the document or record; (b) the date of the document or record; (c) the name and title of the author of the document or record; (d) the name and title of each addressee and recipient; (e) a

description of the subject matter of the document or record sufficient for purposes of identification of the document, except that no description so specific as to constitute a waiver of the privilege shall be required; and (f) an identification of the privilege claimed and the basis for assertion of the privilege. However, no final document or record that is required to be created and submitted to the State pursuant to the requirements of this Consent Decree shall be withheld on the grounds that it is privileged.

45. MDNR may, at any time, challenge claims of business confidentiality or privilege.

**I. Off-Site Shipments**

46. All Hazardous Substances removed off-site pursuant to this Consent Decree for treatment, storage or disposal shall be treated, stored or disposed of at a facility in compliance with all applicable laws.

## VII. COMPLIANCE WITH OTHER LAWS

47. Settling Defendant shall perform all Work required pursuant to this Consent Decree in accordance with all applicable local, state, and federal laws and regulations; except as provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and 40 C.F.R. § 300.430(f). Section 121(e) provides certain exemptions from state and local environmental permitting requirements. Settling Defendant shall provide to MDNR, subject to MDNR review and approval, a list of Applicable or Relevant and Appropriate Requirements ("ARARs") to be considered in connection with the Work. The Work conducted pursuant to this Consent Decree shall be considered necessary and consistent with the NCP.

## VIII. EMERGENCY RESPONSE AND NOTIFICATION OF RELEASES

48. If any incident or change in the condition of the Site occurs during the implementation of Work conducted pursuant to this Consent Decree that causes or threatens to

cause an additional release of Hazardous Substances from the Site or an endangerment to the public health, welfare or the environment, Settling Defendant shall immediately take all appropriate action.  Settling Defendant shall take any such action in accordance with all applicable provisions of this Consent Decree, including but not limited to any applicable site-specific health and safety plan prepared pursuant to the Scope of Work, in order to prevent, abate or minimize such release or endangerment caused or threatened by the release.  Settling Defendant shall also immediately notify MDNR's Project Coordinator or, in the event of their unavailability:

> Duty Officer
> Environmental Emergency Response Section
> Environmental Services Program
> Missouri Department of Natural Resources
> 2701 W. Main Street
> P.O.  Box 176
> Jefferson City, Missouri 65102-0176
> (573) 634-2436 (24-hour number)

49.     Settling Defendant shall submit a written report to MDNR within fifteen (15) days after each release, incident or change in Site conditions as identified in Paragraph 48 above setting forth the events that occurred and the measures taken or to be taken to mitigate any release or potential release or endangerment caused or threatened by the release or potential release and to prevent the reoccurrence of such a release or potential release.  If Settling Defendant fails to take action, MDNR may respond to the release or endangerment and reserves its right to pursue cost recovery.

50.     The reporting requirements under this Section are in addition to, not in lieu of, the reporting requirements set forth in Section 103 of CERCLA, 42 U.S.C. § 9603, and Section 301 et seq., of the Emergency Planning and Community Right-To-Know Act of 1986 ("EPCRA"), 42 U.S.C. § 11001 et seq.

## IX.       AUTHORITY OF MDNR'S PROJECT COORDINATOR

51.     MDNR's Project Coordinator shall be responsible for overseeing the proper and complete implementation of the Work under this Consent Decree.  MDNR's Project Coordinator shall have the authority vested in an On Scene Coordinator/Remedial Project Manager by 40 C.F.R. § 300.120 of the NCP, including the authority to halt, conduct or direct any Work required by this Consent Decree.  The absence of MDNR's Project Coordinator or designee(s) from the Site shall not be cause for stoppage of Work unless specifically directed by MDNR's Project Coordinator.

## X.       REIMBURSEMENT OF PAST AND FUTURE RESPONSE COSTS

52.     Subject to Paragraph 54 below (disputing claims), Settling Defendant shall reimburse MDNR for all Future Response Costs incurred by MDNR with respect to this Consent Decree.  On no longer than an annual basis, within ninety (90) days after the end of the State's fiscal year, MDNR shall submit to Settling Defendant an accounting of all Future Response Costs incurred by the State at the Site with respect to this Consent Decree during the preceding fiscal year. The accounting shall be accompanied by sufficient descriptive back-up documentation to demonstrate that the invoiced costs are Future Response Costs and that the amount claimed is correct, including, but not limited to descriptions of work performed, invoices for costs such as mileage, lodging and food, and vendor invoices for services rendered by a third party such as a laboratory or contractor.  Subject to Paragraph 54 below, Settling Defendant shall, within sixty (60) days after receipt of each accounting for Future Response Costs, remit payment to MDNR for the amount of those undisputed Future Response Costs, made payable to the "Missouri Hazardous Waste Fund."  Interest shall accrue from the date the payment is due on any undisputed amount at the rate determined by the Secretary of the Treasury (currently 2.24 per cent per annum through September 30, 2010) on the unpaid balance until such costs and

accrued interest have been paid in full.  On October 1 of each subsequent fiscal year, any unpaid balance will begin accruing interest at the rate determined by the Secretary of the Treasury.

53.     Settling Defendant's checks for Future Response Costs shall identify the name of the Site, the Site identification number, the title and Civil Action Number for this Consent Decree, and be forwarded to:

> Missouri Department of Natural Resources
> Attention: Chief, Superfund Section
> Hazardous Waste Program
> P.O.  Box 176
> Jefferson City, Missouri 65102-0176

54.     Settling Defendant may dispute pursuant to Section XXII (Dispute Resolution) all or part of an invoice for Future Response Costs submitted under this Consent Decree if Settling Defendant alleges that MDNR has made an accounting error or that a cost is not a Future Response Cost.  If any dispute over any Future Response Cost is resolved before payment is due, the amount due and payment due date will be adjusted accordingly.  If the dispute is not resolved before payment is due, Settling Defendant shall pay the full amount of the undisputed costs into the Missouri Hazardous Waste Fund (the "Fund") as specified above on or before the due date. Settling Defendant shall pay any disputed Future Response Costs determined to be owing based upon the resolution of the dispute within sixty (60) days after the resolution of the dispute. Interest on any disputed amount shall begin to accrue upon sixty (60) days after the date the dispute is resolved for any amounts determined to be owing based upon the resolution of the dispute.

55.     Any costs incurred by MDNR with respect to Past Work and incurred prior to the Effective Date of this Consent Decree will be reimbursed and/or contested by Settling Defendant according to the terms of the 1993 Consent Agreement, provided however, such claim for cost

reimbursement shall be submitted by MDNR to Settling Defendant within 90 (ninety) days after the Effective Date of this Consent Decree.

## XI.      AGENCY APPROVALS/SUBMITTALS

56.     The following procedure will apply to the review and approval of all documents submitted to MDNR for review and approval pursuant to the requirements of this Consent Decree.  MDNR will review each such document and notify Settling Defendant, in writing, within sixty (60) days of its receipt of the document as to its approval or disapproval thereof.  In the event MDNR does not approve any such document, it will provide a written statement as to the basis of the disapproval.  Within sixty (60) business days of receipt of the MDNR comments, or such other time period as agreed to by the Parties, Settling Defendant shall address MDNR's written comments regarding any document not approved by MDNR and resubmit the document to MDNR.  Revised submittals are subject to MDNR approval, approval with conditions, disapproval or disapproval with modifications by MDNR, and are subject to dispute resolution pursuant to Section XXII (Dispute Resolution).  Also subject to the dispute resolution provisions of Section XXII, MDNR will determine whether the document submitted by Settling Defendant is in compliance with the requirements of this Consent Decree.  At that time when MDNR determines that the report is in compliance with the requirements of this Consent Decree, MDNR will transmit to Settling Defendant a written statement to that effect.

57.     MDNR-approved documents shall be deemed incorporated into and made part of this Consent Decree.  Prior to this written approval, no work plan, report, specification, or schedule shall be construed as approved and final.  Oral advice, suggestions, or comments given by MDNR representatives will not constitute an official approval, nor shall any oral approval or oral assurance of approval be considered binding.

## XII.    STIPULATED AND STATUTORY PENALTIES

58.    In the event Settling Defendant fails to meet any requirement of this Consent Decree, Settling Defendant shall pay stipulated penalties, as set forth below unless excused under Section XIV (Force Majeure) or subject to Dispute Resolution under Section XXII.  Compliance by Settling Defendant shall include completion of Work under this Consent Decree or any matter under this Consent Decree in accordance with the requirements of this Consent Decree and within the specified time schedules in and approved under this Consent Decree, unless otherwise agreed to or approved in writing by MDNR.

59.    For failure to submit quarterly progress reports as prescribed in this Consent Decree: $50.00 per day for the first through seventh days of noncompliance, and $150.00 per day for the eighth day and each succeeding day of noncompliance thereafter;

60.    For failure to submit any activity-specific work plans at the time required pursuant to the Scope of Work: $250.00 per day for the first week of noncompliance, and $500.00 per week for each succeeding week of noncompliance thereafter.

61.    For failure to submit a Completion Report and failure to submit the Final Site Report, stipulated penalties shall accrue in the amount of $1,250.00 per week per violation.

62.    Upon receipt of written demand by MDNR, Settling Defendant shall make payment to MDNR within sixty (60) calendar days.  Interest shall accrue on late payments as of the 61st day after receiving notice the payment is due, subject to the right to dispute.

63.    Settling Defendant may dispute MDNR's right to the stated amount of penalties by invoking the dispute resolution procedures under Section XXII herein.

64.    All penalties shall begin to accrue on the date that performance is due or a violation occurs and shall continue to accrue through the final day of correction of the noncompliance.  However, stipulated penalties shall not accrue from the date Settling Defendant

invokes informal dispute resolution pursuant to Section XXII (Dispute Resolution) until the dispute is informally resolved, this Court renders a final decision regarding such dispute, or if the decision of this Court is appealed to the United States Court of Appeals for the Eighth Circuit and/or the United States Supreme Court, until the Eighth Circuit Court of Appeals and/or the United States Supreme Court issues a final decision regarding such dispute.

65.     Penalties need not be paid until the following:

a.     If the dispute is resolved through informal dispute resolution or mediation, as set forth in Section XXII (Dispute Resolution), accrued penalties agreed to be paid to MDNR shall be paid to MDNR within sixty (60) days of the date of the agreement reached through informal dispute resolution or mediation;

b.     If formal dispute resolution is invoked and MDNR prevails in whole or in part, Settling Defendant shall pay all accrued penalties determined by this Court to be owed to MDNR within sixty (60) days of receipt of the Court's decision or order, unless the matter is appealed to the United States Court of Appeals for the Eighth Circuit.

66.     Even if violations are simultaneous, separate penalties shall accrue for separate violations of this Consent Decree.  Penalties shall accrue regardless of whether MDNR has notified Settling Defendant of a violation or act of noncompliance.  The payment of penalties shall not alter in any way Settling Defendant's obligation to complete the performance of the Work required under this Consent Decree.

67.     Except for those violations for which stipulated penalties have been assessed by MDNR and paid by Settling Defendant, violation of any provision of this Consent Decree may subject Settling Defendants to civil penalties under applicable state law.  The payment of

penalties shall not alter in any way Settling Defendant's obligation to complete the performance of the Work required under this Consent Decree.

68. Settling Defendant shall make all payments under this Paragraph by forwarding a check or wire transfer, payable to "State of Missouri (Greene County Treasurer)" to the Office of the Attorney General, P.O. Box 899, Jefferson City, Missouri, 65102-0899, Attention Joann Horvath, Financial Services Division.

69. Checks must be annotated with the name of the Site, the identification number for the Site and the civil action number of this Consent Decree. A copy of the check and transmittal letter shall be forwarded to MDNR's Project Coordinator.

## XIII. RESERVATION OF RIGHTS

70. Except as specifically provided in this Consent Decree, including, but not limited to, Section XVI (Covenant Not to Sue), nothing herein shall limit the power and authority of MDNR or the State to take, direct, or order all additional actions necessary to protect public health, welfare or the environment, or to prevent, abate or minimize an actual or threatened release of Hazardous Substances on, at, or from the Site. Further, except as specifically provided in this Consent Decree, including, but not limited to, Section XVI (Covenant Not to Sue), nothing herein shall prevent the MDNR from seeking legal or equitable relief to enforce the terms of this Consent Decree, from taking other legal or equitable action as it deems appropriate and necessary, or from seeking to require Settling Defendant in the future to perform additional response actions or to reimburse the State for any injury to its natural resources pursuant to CERCLA, § 260.500, et seq., RSMo, or any other applicable law, including the common law of public nuisance. Except as provided in this Consent Decree, including, but not limited to, Section XVI (Covenant Not to Sue), MDNR reserves the right to bring an action against Settling Defendant under Section 107 of CERCLA, 42 U.S.C. § 9607 and/or § 260.530 RSMo, for

recovery of any Future Response Costs incurred by the State of Missouri related to this Site and not reimbursed by Settling Defendant. Settling Defendant reserves all rights and defenses it may have to such actions.

71. Notwithstanding any other provision of this Consent Decree, MDNR reserves the right to perform its own studies, complete the Work (or any portion of the Work) required by this Consent Decree, and seek reimbursement from Settling Defendant for its Future Response Costs, or seek appropriate relief, if Settling Defendant fails to perform. Settling Defendant reserves all defenses to any such action.

72. Nothing in this Consent Decree shall constitute or be construed as a release from any claim, cause of action or demand at law or in equity against any person not a Party to this Consent Decree for any liability arising out of or relating in any way to the Site.

## XIV.    FORCE MAJEURE

73. Settling Defendant agrees to perform all requirements under this Consent Decree within the time limits established under this Consent Decree, unless the performance is delayed by a force majeure event. For purposes of this Consent Decree, a force majeure event is defined as any event arising from causes not foreseeable and beyond the control of Settling Defendant or of any entity controlled by Settling Defendant, including but not limited to, its consultants, contractors, subcontractors or agents, that delays or prevents performance of any obligation under this Consent Decree despite Settling Defendant's best efforts to fulfill the obligation. Force majeure does not include financial inability to complete the Work, unanticipated or increased costs of performance, normal precipitation events, changed economic circumstances or failure to apply for federal, state or local permits to the extent such are required. Force majeure does include, but is not limited to, the inability to perform any Work because such Work would

be inconsistent with any order entered by any court or because such Work would be in conflict with the requirements of other regulatory agencies with jurisdiction over this Site.

74.     Settling Defendant shall notify MDNR orally as soon as practicable, and shall also notify MDNR in writing within fourteen (14) days after Settling Defendant becomes aware of events that constitute a force majeure.  Such notice shall: identify the event causing the delay or anticipated delay; estimate the anticipated length of delay, including necessary demobilization and re-mobilization; state the measures taken or to be taken to minimize the delay; and estimate the timetable for implementation of the measures.

75.     Settling Defendant shall exercise best efforts to avoid and minimize any delay caused by a force majeure.  Failure to comply with the notice requirements of Paragraph 74 (Notice of Force Majeure) shall waive any claim of force majeure by Settling Defendant.

76.     If MDNR determines a delay in performance of a requirement under this Consent Decree is or was attributable to a force majeure, MDNR will notify Settling Defendant of this determination in writing, and the time period for performance of that requirement shall be extended as deemed necessary by MDNR.  Such an extension, of itself, shall not alter Settling Defendant's obligation to perform or complete other tasks required by the Order which are not directly affected by the force majeure.

77.     If MDNR does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, MDNR will notify Settling Defendant in writing of its decision. If Settling Defendant elects to invoke the dispute resolution procedures set forth in Section XXII (Dispute Resolution), it shall do so no later than twenty (20) days after receipt of MDNR's notice.  In any such proceeding, Settling Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a

force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendant complied with the requirements of Paragraph 74 (Notice of Force Majeure). If Settling Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Settling Defendant of the affected obligation of this Consent Decree identified to MDNR and/or the Court.

## XV.  OTHER CLAIMS

78.  By entering into this Consent Decree, MDNR assumes no liability for injuries or damages to persons or property resulting from any acts or omissions of Settling Defendant. MDNR shall not be deemed a party to any contract entered into by Settling Defendant or its directors, officers, employees, agents, successors, representatives, assigns, contractors or consultants in carrying out actions pursuant to this Consent Decree.

79.  Nothing in this Consent Decree constitutes a satisfaction of or release from any claim or cause of action against any person not a Party to this Consent Decree, for any liability such person may have under CERCLA, RCRA, or other statutes, or the common law, including but not limited to any claims of MDNR for costs, damages and interest under Sections 106(a) and 107(a) of CERCLA, 42 U.S.C. §§ 9606(a) and 9607(a).

## XVI.  COVENANT NOT TO SUE

80.  In consideration of the Work that has been and will be performed and the payments that have been and will be made by Settling Defendant under the terms of this Consent Decree, the State covenants not to sue and agrees not to assert any claims or causes of action or take administrative action against Settling Defendant for Matters Addressed in this Consent Decree (including, but not limited to Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607, or § 260.530, et seq., RSMo, and the legal authority recited in this Consent Decree or the

Complaint, however MDNR and the State reserve their right to sue for reimbursement for injury or damages to natural resources pursuant to CERCLA, RSMo or any other applicable law, including the common law doctrines related to natural resource injury or damages, subject to all rights and defenses Settling Defendant may have to such actions). This covenant not to sue shall take effect upon the Effective Date and is conditioned upon the complete and satisfactory performance by Settling Defendant of its obligations under this Consent Decree, including, but not limited to, payment of Future Response Costs pursuant to Section X. By satisfying the requirements of this Consent Decree, Settling Defendant shall have resolved its liability to the State of Missouri for Matters Addressed in this Consent Decree under applicable federal and state law, including but not limited to Section 113(f)(3)(B) of CERCLA. The State's covenants in this Paragraph 80 extend only to Settling Defendant and do not extend to any other persons.

## XVII. CONTRIBUTION PROTECTION AND CONTRIBUTION RIGHTS

81. With regard to claims for contribution against Settling Defendant for Matters Addressed in this Consent Decree, the Parties hereto agree, and by entering this Consent Decree, this Court finds that Settling Defendant has resolved its liability to the State of Missouri for Matters Addressed in this Consent Decree and is entitled to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), Section 107 of CERCLA, 42 U.S.C. § 9607, and all other applicable federal and state laws, whether statutory or common law. Further, this Consent Decree, once approved by the Court, is a judicially approved settlement as that term is used in Section 113(f)(3)(B) of CERCLA. Nothing in this Consent Decree precludes MDNR or Settling Defendant from asserting any claims, causes of action or demands against any persons not parties to this Consent Decree for indemnification, contribution, cost recovery, or other claims under applicable law.

82. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

83. Settling Defendant agrees that with respect to any suit or claim for cost recovery or contribution brought by it for Matters Addressed in this Consent Decree, it will notify the State in writing no later than thirty (30) days after the initiation of such suit or claim.

84. Settling Defendant also agrees that with respect to any suit or claim for contribution brought against it for Matters Addressed in this Consent Decree, it will notify the State in writing within thirty (30) days of service of the complaint on it. In addition, Settling Defendant shall notify the State within thirty (30) days of service or receipt of any Motion of Summary Judgment, and within thirty (30) days of receipt of any order from a court setting a case for trial.

85. In any subsequent administrative or judicial proceeding initiated by the State for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XVI (Covenant Not to Sue).

86.     MDNR shall make reasonable efforts to notify Settling Defendant of any environmental contamination, investigation, or remediation involving chlorinated compounds and/or copper within a five (5) mile radius of the Site which MDNR's Project Manager may become aware of during the term of this Consent Decree, provided however, MDNR's failure to so notify Settling Defendant shall not be a breach of this Consent Decree nor would that failure to notify relieve Settling Defendant from any of its obligations under this Consent Decree.

## XVIII.    INDEMNIFICATION

87.     Settling Defendant agrees to indemnify, save and hold harmless MDNR, its officials, agents, contractors, subcontractors, employees and representatives from any and all claims or causes of action: (A) arising from, or on account of, acts or omissions of Settling Defendant, Settling Defendant's officers, directors, employees, agents, contractors, subcontractors, receivers, trustees, successors or assigns, in carrying out actions pursuant to this Consent Decree; and (B) for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Settling Defendant, and any persons for performance of Work on or relating to the Site, including claims on account of construction delays.  In addition, Settling Defendant agrees to pay MDNR reasonable costs incurred by MDNR, including litigation costs arising from or on account of claims made against MDNR based on any of the acts or omissions referred to in the preceding sentence.  Settling Defendant shall have no indemnity obligation hereunder where any claim or cause of action arises out of or results from MDNR's own negligent acts or omissions or willful misconduct, or that of MDNR's officials, agents, contractors, subcontractors, employees and representatives.

## XIX.    MODIFICATIONS

88.     No material modifications shall be made to this Consent Decree without written notification to and written approval of the MDNR, Settling Defendant, and the Court; provided,

however, that material modifications, additions or amendments to any plan (including the Scope of Work) or schedule prepared pursuant to this Consent Decree may be made in writing by signature of the delegated MDNR signatory or his/her designee and by signature of Settling Defendant.

89.     Minor modifications to any plan (including the Scope of Work) or schedule may be made in writing by MDNR Project Coordinator and Settling Defendant's Project Coordinator. Other minor changes, including changes to this Consent Decree, may only be made in writing by signature of the delegated MDNR signatory or his/her designee and by signature of Settling Defendant.

90.     If Settling Defendant seeks permission to deviate from any approved plan or schedule (or the Scope of Work), Settling Defendant's Project Coordinator shall submit a written request to MDNR for approval outlining the proposed modification and its basis.

91.     No informal advice, guidance, suggestion or comment by MDNR regarding reports, plans, specifications, schedules, or any other writing submitted by Settling Defendant shall relieve Settling Defendant of its obligation to obtain such formal approval as may be required by this Consent Decree, and to comply with all requirements of this Consent Decree unless and until this Consent Decree is formally modified.

92.     Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this Consent Decree.

## XX.     NOTICE OF COMPLETION

93.     In accordance with the terms of Section XI (Agency Approvals/Submittals), when MDNR determines, after MDNR's review of the Final Site Report, that the Work has been fully performed in accordance with this Consent Decree, with the exception of any continuing

obligations such as the record retention requirements of this Consent Decree, MDNR will provide a Notice of Completion to Settling Defendant.

94.     Upon issuance of the Notice of Completion, the State and Settling Defendant shall so advise the Court, and this Consent Decree shall terminate and the obligations of Settling Defendant under this Consent Decree shall be deemed satisfied, except for the record retention obligations in Section VI.H and the payment of those Future Response Costs an accounting of which are submitted by MDNR to the Settling Defendant within 180 days after the Notice of Completion.

## XXI.     ADDITIONAL WORK

95.     If MDNR determines that additional Work not included in an approved plan is necessary to complete the Scope of Work, MDNR will notify Settling Defendant of that determination and reference this Section XXI of this Consent Decree.  Settling Defendant shall confirm its willingness to perform the additional Work in writing to MDNR within thirty (30) days of receipt of the MDNR request, or Settling Defendant shall invoke the dispute resolution provisions of Section XXII of this Consent Decree.  Subject to resolution of any dispute, Settling Defendant shall implement the additional Work which MDNR determines are necessary.  Unless otherwise stated by MDNR, or unless Settling Defendant invokes dispute resolution, within thirty (30) days of receipt of notice from MDNR that additional Work is necessary, Settling Defendant shall submit for approval by MDNR a work plan for the additional Work.  This work plan shall conform to the applicable requirements of Section VI (Performance of the Work by Settling Defendant) of this Consent Decree.  Upon MDNR's approval of the work plan, or MDNR's modification of the work plan, pursuant to Section XI (Agency Approvals/Submittals) of this Consent Decree, Settling Defendant shall implement the plan for additional Work in accordance with the provisions and schedules contained therein, and such additional Work shall

be considered "Work" for purposes of this Consent Decree. MDNR reserves the right to conduct the Work itself at any point, to seek reimbursement from Settling Defendant, and/or to seek any other appropriate relief, if Settling Defendant fails or declines to perform such Work.

## XXII. DISPUTE RESOLUTION

96.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the State to enforce obligations of Settling Defendant that have not been disputed in accordance with this Section. This Section XXII shall not apply to disputes arising under Section XVIII (Indemnification) of this Consent Decree.

97.     Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the Parties. The period for informal negotiations shall not exceed thirty (30) days from the time the dispute arises, unless it is modified by written agreement of the Parties. The dispute shall be considered to have arisen when Settling Defendant sends the State a written Notice of Dispute.

98.     In the event that the Parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by MDNR shall be considered binding unless, within twenty (20) days after the conclusion of the informal negotiation period, Settling Defendant invokes the formal dispute resolution procedures of this Section by filing a motion with the Court to invoke the formal dispute resolution procedures of this Consent Decree.

99.     Upon the filing of the motion, Settling Defendant shall request that the Court appoint a mediator that shall be agreed upon by the Parties and recommended to the Court. Settling Defendant may state in its motion that the State concurs in Settling Defendant's request for the appointment of a mediator.

100.     If the Court finds that mediation is an appropriate dispute resolution mechanism for the Parties' dispute, the Court may appoint the Parties' proposed mediator to informally mediate the dispute using a procedure and schedule established by the mediator.  The Court, in its discretion, or if the Parties are unable to reach a consensus concerning whom they would recommend as a mediator, may alternatively appoint a mediator of its choice.  The period for mediation shall not exceed ninety (90) days from the time the Court appoints a mediator, unless it is modified by written agreement of the Parties and with the approval of the Court.  No documents presented or statements made to the mediator or between the Parties during the course of the mediation shall become part of any official record nor shall they be admissible as evidence in any proceeding.

101.     Upon the completion of the mediation, the mediator shall inform the Court either that the Parties have resolved their dispute or that mediation was not successful in resolving the dispute.  If mediation was not successful, the Parties shall request that the Court, in its discretion, appoint a special master to hear the dispute, which may include, and not necessarily be limited to, briefing and oral testimony.  The special master shall make findings and report his/her findings to the Court, upon which the Court will decide the Parties' dispute.  A decision of the Court regarding the dispute shall be considered a final order with respect to the motion that initiates the dispute resolution process provided for herein.

102.     The invocation of dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Settling Defendant under this Consent Decree not directly in dispute, unless MDNR or the Court agrees otherwise.  Stipulated penalties with respect to the disputed matter shall accrue as provided in Section XII (Stipulated Penalties).

In the event that Settling Defendant does not prevail on the disputed issue, stipulated penalties may be assessed and paid as provided in Section XII (Stipulated Penalties).

## XXIII.    SEVERABILITY

103.    If the Court issues an order that invalidates any provision of this Consent Decree or finds that Settling Defendant has sufficient cause not to comply with one or more provisions of this Consent Decree, Settling Defendant shall remain bound to comply with all provisions of this Consent Decree not impacted or determined to be subject to a sufficient cause defense by the court's order.

## XXIV.    NOTICES AND SUBMISSIONS

104.    Whenever, under the terms of this Consent Decree, written notice is required to be given by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Party in writing.  The notices required to be made to the State in Paragraphs 12, 16, 20 and 24 shall not need to be given to the Missouri Attorney General's Office.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the State and the Settling Defendant:.

As to the State:
John K. McManus
Assistant Attorney General
Missouri Attorney General's Office
P.O.  Box 899
Jefferson City, Missouri 65102
Telephone: (573)751-8370
Fax: (573)751-8796
jack.mcmanus@ago.mo.gov

As to MDNR:

Evan Kifer

Environmental Specialist

Remedial Project Management Unit

Missouri Department of Natural Resources

Hazardous Waste Program

P.O. Box 176

Jefferson City, Missouri 65102

Telephone: (573)751-1990

Fax: (573)751-7869

Evan.kifer@dnr.mo.gov

As to the Settling Defendant:

Jill M. Palmer

Assistant General Counsel

Environmental Law

Northrop Grumman Corporation

7555 Colshire Drive

M/S C-4S1

McLean, VA 22102

Telephone: (703)556-2947

Fax: (703)556-2964

jill.palmer@ngc.com

Jay Tolle, Manager

Environmental Programs & Remediation

Northrop Grumman Systems Corporation

Electronic Systems

P.O. Box 1693

Mailstop 1401

Baltimore, Maryland 21203

Telephone: (410)765-0402

Fax: (410)694-2983

jay.tolle@ngc.com

## XXV.     EFFECTIVE DATE AND COMPUTATION OF TIME

105.    The effective date of this Consent Decree shall be the date upon which this

Consent Decree is entered by the Court.    All times for performance of the Work shall be

calculated from this Effective Date.

## XXVI. TERMINATION OF 1993 CONSENT AGREEMENT

106. The 1993 Consent Agreement shall terminate upon the Effective Date of this Consent Decree, with the exception of any outstanding obligation of Settling Defendant to reimburse MDNR for past response costs incurred under the 1993 Consent Agreement pursuant to Paragraph 55 of this Consent Decree.

## XXVII. RETENTION OF JURISDICTION

107. This Court retains jurisdiction over both the subject matter of this Consent Decree and the Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling either of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to administer and/or resolve disputes in accordance with Section XXII (Dispute Resolution) hereof.

## XXVIII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

108. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment. The State reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Consent Decree without further notice.

109. If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the sole discretion of either Party, and the terms of this Consent Decree may not be used as evidence in any litigation between the Parties.

## XXIX.    SIGNATORIES/SERVICE

110.    The undersigned representative of Settling Defendant to this Consent Decree and the State of Missouri certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

111.    Settling Defendant hereby agrees not to oppose entry of this Consent Decree by the Court or to challenge any provision of this Consent Decree unless the State has notified Settling Defendant in writing that it no longer supports entry of this Consent Decree.

112.    This Consent Decree may be executed in multiple counterparts, each of which when executed and delivered to MDNR shall be deemed to be an original, but such counterparts shall together constitute one and the same document.  The signature of a Party to any counterpart shall be deemed a signature to the same document.

## XXX.    DISCLAIMER

113.    The participation of Settling Defendant in this Consent Decree shall not be considered an admission of liability for any purpose and is not admissible in evidence against Settling Defendant in any judicial or administrative proceeding, provided, however, that the Consent Decree shall be admissible in evidence in a proceeding by the State of Missouri to enforce this Consent Decree or a judgment relating to it.   Settling Defendant retains its rights to assert claims against other entities with respect to the Site.  However, Settling Defendant agrees not to contest the validity or terms of this Consent Decree or the procedures underlying or relating to it in any action brought by the State to enforce its terms.

## XXXI.    FINAL JUDGMENT AND SETTLEMENT

114.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment and settlement between and among the State of Missouri

and Settling Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment and settlement as a final judgment under Fed. R. Civ. P. 54.

SO ORDERED THIS  1ˢᵗ  DAY OF _____June_____, 2011.


___/s/ Greg Kays_____
Greg Kays
United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the Matter of the State of

Missouri v. Northrop Grumman Guidance and Electronics Company, Inc., relating to the Site.


     FOR THE STATE OF MISSOURI


11/24/10_____          /s/ Leanne Tippett Moseby____
Date                                Leanne Tippett Moseby, Director
                                    Division of Environmental Quality
                                    Missouri Department of Natural
                                    Resources
                                    P.O. Box 176
                                    Jefferson City, Missouri 65102


11/18/10_____          /s/ John K. McManus__
Date                                John K. McManus
                                    Chief Counsel
                                    Missouri Attorney General's Office
                                    P.O. Box 899
                                    Jefferson City, Missouri 65102

THE UNDERSIGNED PARTY enters into this Consent Decree in the Matter of the State of Missouri v. Northrop Grumman Guidance and Electronics Company, Inc., relating to the Site.

NORTHROP GRUMMAN GUIDANCE AND ELECTRONICS COMPANY, INC.,

/s/  E.D. Iversen_____        2/16/10_____

E.D. Iversen                                              Date
Sector Vice President Mission Assurance
Northrop Grumman Guidance and Electronics Company, Inc.
P.O. Box 17319, Mail Stop A502
Baltimore, Maryland 21203